JOHN S. YUN (Cal. Bar No. 112260)
 E-mail: yunj@sec.gov
JASON H. LEE (Cal. Bar No. 253140)
 E-mail: leejh@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Erin E. Schneider, Regional Director
Monique C. Winkler, Associate Regional Director
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> RUBEN JAMES ROJAS, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** |

COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the events constituting or giving rise to the alleged violations of the federal securities laws occurred in the Central District of California. In addition, the defendant resides in this district.

## SUMMARY OF THE ACTION

3. Under the direction of defendant Ruben James Rojas ("Rojas"), the Montebello Unified School District's ("Montebello" or the "District") Chief Business Officer, Montebello sold $100 million in municipal bonds to public investors in late December 2016 in violation of the federal securities laws. Specifically, Rojas and Montebello concealed from investors in the offering that Montebello's independent auditor had raised concerns about potential fraud and internal controls problems at the District.

4. Beginning in mid-November 2016, over a month before the final bond sale, a senior Montebello accounting officer told Montebello's independent auditor (the "Audit Firm") about allegations of fraud and accounting improprieties at the District. The Audit Firm requested information regarding these allegations, but Montebello and Rojas failed to provide timely responses, thereby impeding the audit's timely completion. The Audit Firm repeatedly warned Rojas, other Montebello officials and Montebello's Board of Education ("Board") that the Audit Firm could not complete its pending audit for fiscal year 2016 without

conducting further analyses of the fraud allegations and the District's accounting controls.

5.      Rather than authorizing the Audit Firm to conduct the necessary analyses and audit procedures, Montebello and Rojas terminated the Audit Firm on or soon after a Montebello Board meeting on December 15, 2016.  This termination foreclosed the Audit Firm's performance of additional audit procedures and prevented the Audit Firm from completing its fiscal year 2016 audit of Montebello's financial statements.

6.      Montebello and Rojas concealed the Audit Firm's termination and concerns from investors in the December 2016 bond offering.  Instead of disclosing the Audit firm's termination and concerns, Montebello's bond offering documents deceptively stated only that the Audit Firm "serves as independent auditor to the District" and attached the fiscal year 2015 audited financial statements from the Audit Firm, with a clean audit opinion by the Audit Firm for the previous fiscal year.  These statements and omissions gave investors the false impression that the fiscal year 2016 audit, and a clean opinion for that audit, would be forthcoming.

7.      Rojas rendered the bond offering documents materially misleading and carried out a fraudulent scheme to conceal significant issues raised by the Audit Firm in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Sections 17(a)(1) and 17(a)(3) of the Securities Act.  Rojas also aided and abetted Montebello's violations of Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.  Additionally, Rojas is liable for each of Montebello's Exchange Act violations as a control person of the District.

## DEFENDANT

8.      **Ruben James Rojas**, age 56, is a resident of Corona, California.  From July 2015 to March 2017, he served as the Chief Business Officer of Montebello. Rojas oversaw and managed Montebello's $100 million bond offering, including the

preparation of the offering documents for the bonds, which included a Preliminary Official Statement ("POS"), a Supplemented Preliminary Official Statement ("Supplemented POS"), and a Final Official Statement ("FOS") (collectively, "Offering Documents"). Rojas was the primary contact for the bond and disclosure counsel and municipal advisor retained by Montebello to assist with the bond offering. He was also the primary person through which bond and disclosure counsel, the municipal advisor, the underwriters, and underwriters' counsel received information for inclusion in the Offering Documents for the bonds. Rojas received, reviewed and provided edits for multiple drafts of the Offering Documents, and was the only Montebello staff member whose approval was required before any of the three Offering Documents could be disseminated to investors. Rojas provided such approval for the dissemination of each document. Montebello placed Rojas on temporary paid administrative leave for one month beginning in late summer of 2016, and ultimately terminated his contract in March 2017.

## RELEVANT ENTITIES

9.      **Montebello Unified School District** is a California public school district that was established in 1936. Its territory spans multiple cities located in eastern Los Angeles County, California. It is governed by a five-member elected Board of Education. Using email, Montebello disseminated the POS for the $100 million bond offering to investors on December 7, 2016, disseminated the Supplemented POS to investors on December 19, 2016, and disseminated the FOS to investors on December 21, 2016. Montebello posted the FOS on the Municipal Securities Rulemaking Board's Electronic Municipal Market Access website, an online repository that provides public access to municipal securities disclosures and related information. After the bond offering closed on December 28, 2016, Montebello received the cash proceeds generated by the offering, less fees paid to the professional firms which provided services in connection with the deal.

10.      The **Audit Firm** is an independent auditing firm with its principal place

of business in Los Angeles, California. It has been registered with the Public Company Accounting Oversight Board since 2003. The Audit Firm served as Montebello's independent auditor and audited the District's financial statements for fiscal years 2014 and 2015. The Audit Firm also served as Montebello's independent auditor for fiscal year 2016, ending on June 30, 2016, but was fired before it could complete its audit for that year.

## FACTUAL ALLEGATIONS

### Montebello Retains the Audit Firm for its Fiscal Year 2016 Audit

11.    On March 3, 2016, Montebello's Board approved the Audit Firm's retention to audit the District's fiscal year 2016 financial statements. Rojas signed the Engagement Letter on behalf of Montebello on March 12, 2016. Under the requirements of Section 41020 of the California Education Code, the completed fiscal year 2016 audited financial statements were due by December 15, 2016.

12.    The Engagement Letter specified an audit fee of $91,500, subject to the need by the Audit Firm to spend additional time due to Montebello's failure to facilitate the audit by making information available or due to "unexpected circumstances." The Engagement Letter made Montebello responsible for providing the Audit Firm with the access, information and representation letters necessary to complete the audit in a timely manner. The Engagement Letter also provided that the audit would be conducted in accordance with Generally Accepted Auditing Standards ("GAAS"), Government Auditing Standards ("GAS"), the Standards and Procedures for Audit of California K-12 Local Educational Agencies 2015-2016, as well as certain specified United States and California requirements. The Engagement Letter further stated that the Audit Firm would review Montebello's accounting controls and would disclose weaknesses in Montebello's accounting controls in its audit report. The Engagement Letter therefore described the work that the Audit Firm had to perform to provide a clean opinion for the District's fiscal year 2016 audited financial statements.

COMPLAINT                                          4

**The Audit Firm Repeatedly Raises Concerns About Fraud And Internal Controls Issues**

13.     Shortly before or during a visit to Montebello's offices in mid-November 2016, the lead partner and a manager for the Audit Firm learned that Rojas had been placed on administrative leave during the month of September 2016 due to allegations of improper conduct.  At the office visit, a senior Montebello manager also informed the Audit Firm that there were certain accounting areas, such as contract authorization, procurement, and information technology, as well as management integrity, which the Audit Firm should look into.  In light of this conversation, the Audit Firm began seeking additional documents and information regarding the allegations of misconduct and the District's accounting controls.

14.     On December 1, 2016, the Audit Firm sent a letter to Montebello noting that it had been made aware of allegations of improprieties at the District as well as questions concerning Rojas's qualifications and integrity, which could impact the firm's ability to complete its pending audit of Montebello's fiscal year 2016 financial statements.  Additionally, the Audit Firm made the highly unusual request for a closed session meeting with Montebello's Board to discuss the Firm's concerns.  Montebello's Superintendent of Schools ("Superintendent") and Board president received a copy of the letter on December 2, 2016.  By the morning of December 7, 2016, Rojas had also received a copy of the letter and discussed it with the District's Superintendent.

15.     In the late evening of December 7, 2016, Montebello issued the POS to investors, which did not disclose the existence of the Audit Firm's December 1, 2016 letter or the letter's contents, and which instead just contained language that the District's financial statements are audited annually and generally available about six months after the close of the fiscal year.  The POS also contained a copy of the Audit Firm's fiscal year 2015 audit report, which issued the District's financial statements an unmodified or clean audit opinion.  The POS was materially misleading because it

suggested that the fiscal year 2016 audit would be forthcoming in a timely fashion without disclosing that the Audit Firm requested a closed Board meeting to discuss concerns, including concerns about alleged improprieties at the District, that could delay the audit's completion.  Rojas approved and authorized the dissemination of the POS to investors.

16.    On December 9, 2016, the Audit Firm sent a second letter to Montebello, which was circulated to Rojas, Montebello's Superintendent, and each of Montebello's five Board members.  The Audit Firm's second letter noted that additional matters had arisen that could potentially prevent the completion of the fiscal year 2016 audit.  Among other things, the Audit Firm explained that: (1) certain audit procedures had been delayed due to the actions of Montebello's management; (2) expanded procedures were necessary in order for the Audit Firm to complete the audit and render an audit opinion; and (3) Montebello needed to request an extension of the December 15 deadline for the filing of its audited financial statements with the Los Angeles County Office of Education ("LACOE") and California State Controller's Office.  The Audit Firm also reiterated its request for a closed session meeting with Montebello's Board to discuss its concerns and to obtain authorization to perform the required additional audit procedures.

17.    On or about the same time that the Audit Firm sent its December 9, 2016 letter, the Audit Firm's lead partner working on Montebello's audit spoke by phone with Montebello's General Counsel.  During that call, the lead partner noted that the Audit Firm had concerns related to allegations of fraud and misconduct at Montebello, including specifically with respect to Rojas, and that the Audit Firm could not complete its audit without performing expanded procedures related to those concerns.

18.    On December 12, 2016, the lead partner sent an email to Montebello's General Counsel further detailing the Audit Firm's concerns as well as laying out specific steps that were required to be completed under governing auditing standards

COMPLAINT                                          6

before the Audit Firm could finish its audit work.  Among other things, the December 12, 2016 email noted that the Audit Firm had concerns about: (i) "allegations relating to the qualifications and integrity of" Rojas, including allegations of "dishonesty, improper procurements, conflict of interest, payroll mismanagement and misrepresented prior experience;" (ii) "[t]he absence of qualified management personnel to respond to audit inquiries, provide representations on behalf of the District, and review and take responsibility for the District's financial statements and the assertions contained therein;"  (iii) "[c]oncerns as to motivation and delays caused by Ruben Rojas's decision to alter [] letters to District attorneys requesting information as to matters of potential financial statement significance;" and (iv) "[i]ncomplete audit information and delays caused by the failure of Ruben Rojas to respond to a request for a discussion" regarding the "risk of financial fraud at the District, efforts to mitigate against fraud, and his knowledge of any actual or alleged instances of fraud."

19.     The December 12, 2016 email further stated that, as a result of the above issues, the Audit Firm could not complete its pending audit of Montebello's fiscal year 2016 financial statements because, among other things: (i) it could not rely on the representations provided by Rojas; (ii) could not "obtain an understanding of the District's assessment of risks of fraud, fraud mitigation procedures, allegations of fraud, and incidents of fraud;" and (iii) could not "obtain information directly from attorneys providing legal services to the District" necessary for completion of the audit.

20.     Montebello's General Counsel forwarded the Audit Firm's December 12, 2016 email to the District's Superintendent.  On December 13, 2016, Montebello's General Counsel and Superintendent had a call with the Audit Firm's lead partner to further discuss the Audit Firm's concerns.

21.     On December 13, 2016, Rojas signed, on Montebello's behalf, the Contract of Purchase with the underwriters for the bond offering.  In addition to

COMPLAINT                                                 7

setting forth the interest rates, yields, and repayment schedule for the bonds, the Contract of Purchase required Montebello to disclose, and to certify in writing the disclosure of, any information of which Montebello was aware that would render the information in the FOS false or materially misleading as of the planned December 28, 2016 final closing date.  The Contract of Purchase also authorized, up to the final closing date, the underwriters to cancel the bond offering if Montebello disclosed, or the underwriters learned of, information that would render the information in the FOS false or materially misleading.

22.    On or about December 14, 2016, the Audit Firm lead partner and Rojas had a call where the lead partner reiterated the various issues the Audit Firm had identified for Montebello, including fraud and internal controls concerns related specifically to Rojas.  Among other things, the lead partner noted that Montebello was now considered at a higher risk level from an audit standpoint, which necessitated the performance of expanded audit procedures before the pending audit could be completed.

### Montebello Terminates the Audit Firm, While Montebello and Rojas Fail to Disclose the Audit Firm's Communications and Termination

23.    On December 15, 2016, Montebello's Board, Superintendent, General Counsel, and Rojas discussed the Audit Firm's concerns and request to perform expanded audit procedures during a closed Board meeting session.  Because the discussion occurred in closed session, no members of the public were permitted to attend and the contents of the discussion were not disclosed.  Furthermore, the discussion regarding the Audit Firm during the closed session was not on the Board's written agenda for the meeting and the results of the discussion were not recorded in the Board minutes.  During the closed meeting, Montebello's Board and management refused to authorize the fees needed for the requested expanded procedures, which precluded the Audit Firm from being able to investigate its concerns, complete its pending audit, or issue an audit opinion.  During that same December 15, 2016 non-

public Board meeting, or in the days immediately after it, Montebello also decided to fire the Audit Firm.  On December 22, 2016, Rojas informed the Audit Firm by phone that it had been terminated by Montebello and instructed the firm to stop performing all audit work.

24.     On December 19, 2016, Montebello issued the Supplemented POS, and on December 21, 2016, it disseminated the FOS.  The Supplemented POS and FOS deceptively stated that the Audit Firm "serves as independent auditor to the District" and included a clean audit opinion from the Audit Firm from the prior fiscal year, while failing to disclose the Audit Firm's concerns; Montebello's refusal to provide the Audit Firm with additional funds to perform additional investigation and analyses; and the Audit Firm's termination.  In light of those omissions, the statement that the Audit Firm serves as independent auditor to the District and the inclusion of the clean audit report were materially misleading because they gave the false impression that the audit and a clean audit opinion for fiscal year 2016 would be forthcoming in a timely fashion.

25.     These misleading statements and omissions were material to investors. The undisclosed information would have been significant to the underwriters' and their counsel's willingness to move forward with Montebello's bond offering at that time, and would have been material to an investor's willingness to purchase Montebello's bonds at the then-prevailing price and yield.  Montebello's Contract of Purchase with the underwriters required Montebello's disclosure of this information to the underwriters by no later than the December 28, 2016 final closing date, and authorized the underwriters to cancel the offering before the final closing.

26.     Rather than inform the underwriters as well as bond and disclosure counsel about the omitted information regarding the Audit Firm's concerns and termination, Montebello provided those firms with multiple false certifications, dated December 28, 2016.  Those certifications falsely represented that the POS as supplemented and FOS did not contain any material misleading statements or

omissions.

27.    Rojas received multiple drafts of the Offering Documents, helped prepare the POS and Supplemented POS, and approved each of the Offering Documents' dissemination before they were sent to investors.  Based on his receipt and review of multiple drafts of the Offering Documents, Rojas knew, was reckless in not knowing, or should have known that the Offering Documents contained misleading statements and omissions related to the Audit Firm and the District's fiscal year 2016 financial statement audit.

28.    Rojas acted with knowledge, recklessness, or a failure to exercise reasonable care when he authorized the dissemination of the Offering Documents to investors even though they contained materially misleading statements and omissions regarding the Audit Firm, the status of the fiscal year 2016 audit, and the District's audited financial statements.  Rojas also acted with knowledge, recklessness, or a failure to exercise reasonable care, when he concealed from bond and disclosure counsel and the underwriters the Audit Firm's concerns, request to perform expanded audit procedures, and termination.

29.    To the extent that Rojas – the person at Montebello in charge of managing the bond offering and whose job responsibilities included running all aspects of the District's bond program – did not review the various draft Offering Documents he received in order to understand their contents, including their references to Montebello's auditor and audited financial statements, he acted at the very least with recklessness and failed to exercise reasonable care.

**Rojas Engages in Additional Conduct that Concealed the Audit Firm's Concerns and Termination from Gatekeepers and Investors**

30.    Rojas engaged in additional conduct that concealed the Audit Firm's various concerns.  On December 14, 2016, Rojas sent a letter to LACOE, which was also provided to the California State Controller's Office, requesting an extension to the December 15, 2016 deadline for the filing of the District's fiscal year 2016 audit

report.  Among other things, the letter stated that the Audit Firm had "informed the District that an extension should be filed as the Auditors 'require additional supporting documentation in connection with expanded test work in certain areas.'" The letter was misleading, however, because it did not disclose the concerns raised by the Audit Firm or that the Audit Firm's "expanded test work" related to concerns about allegations of fraud and internal controls issues identified by the Audit Firm. Rojas wrote this misleading letter.

31.     In addition, in December 2016, while Rojas was working with bond and disclosure counsel on the Supplemented POS, counsel specifically inquired about the status of the fiscal year 2016 audit.  Rojas responded on December 19, 2016 by stating only that Montebello had received an extension of the filing deadline for the audit report.  Rojas did not disclose to bond and disclosure counsel the concerns raised by the Audit Firm, the need to perform additional audit procedures, or that Montebello decided to fire the Audit Firm.  If Rojas had disclosed the Audit Firm's concerns and termination to bond and disclosure counsel, counsel would have included disclosures about those items as well as the related delay in the completion of Montebello's fiscal year 2016 financial statement audit in the offering documents for Montebello's December 2016 bonds.

32.     A new audit firm, the Replacement Firm, was hired to re-perform Montebello's fiscal year 2016 financial statement audit in January 2017, after the December 2016 bond offering successfully closed on December 28, 2016.  In January 2017, the engagement partner for the Replacement Firm asked Rojas on a phone call why the Audit Firm had been terminated by Montebello.  In response, Rojas concealed the fact that the Audit Firm had repeatedly raised concerns about allegations of fraud and internal controls issues at Montebello, including concerns related specifically to Rojas, and had also requested authorization to perform expanded audit procedures required by governing auditing standards in order for the completion of its pending audit.  Instead, Rojas responded by noting only that the

COMPLAINT                                        11

Audit Firm had tried to bill the District for additional fees and that Montebello's Board was not happy about that and thus decided to terminate the firm. Rojas's deceptive and partial disclosure of information in response to the Replacement Firm's inquiry again prevented public disclosure of the Audit Firm's concerns, including concerns about allegations of fraud and improprieties specifically involving Rojas.

33. Montebello ultimately paid the Audit Firm $98,700 for the work that it performed in connection with the District's fiscal year 2016 financial statement audit before being fired. Montebello subsequently paid the Replacement Firm another $76,000 to perform a completely new audit of the District's fiscal year 2016 financial statements. Thus, Montebello incurred significant costs as a result of its decision to fire the Audit Firm after the firm raised its concerns.

34. When the Replacement Firm finally completed its fiscal year 2016 audit of Montebello in May 2017, it issued the District a qualified audit opinion, noting: "We were unable to obtain sufficient appropriate audit evidence to sufficiently reduce the risk of material misstatement of the financial statements due to potential fraud." The Replacement Firm also identified 13 significant deficiencies in Montebello's internal controls.

## FIRST CLAIM FOR RELIEF

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(a) Thereunder**

35. The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

36. By reason of the foregoing, Rojas directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, has employed devices, schemes, and artifices to defraud.

37. By reason of the foregoing, Rojas directly or indirectly has violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. §

78j(b)] and Rule 10b-5(a) thereunder [17 C.F.R. § 240.10b-5(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder

38.     The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

39.     By reason of the foregoing, Rojas directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, has made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading.

40.     By reason of the foregoing, Rojas directly or indirectly, has violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## THIRD CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(c) Thereunder

41.     The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

42.     By reason of the foregoing, Rojas directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, knowingly or recklessly, has engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities and upon other persons.

43.     By reason of the foregoing, Rojas directly or indirectly, has violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(c) thereunder [17 C.F.R. § 240.10b-5(c)].

## FOURTH CLAIM FOR RELIEF

### Violations of Section 17(a)(1) of the Securities Act

44.     The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

45.     By reason of the foregoing, Rojas directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly or recklessly, has employed devices, schemes, and artifices to defraud.

46.     By reason of the foregoing, Rojas directly or indirectly, has violated, and unless enjoined will continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## FIFTH CLAIM FOR RELIEF

### Violations of Section 17(a)(3) of the Securities Act

47.     The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

48.     By reason of the foregoing, Rojas directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, has engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

49.     By reason of the foregoing, Rojas directly or indirectly, has violated, and unless enjoined will continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## SIXTH CLAIM FOR RELIEF

### Control Person Liability for Montebello's Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

50.     The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

51.     By reason of the foregoing, Montebello violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

52.     At all times relevant hereto, Rojas directly or indirectly controlled Montebello for purposes of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

53.     By engaging in the conduct alleged above, Rojas is liable as a control person for Montebello's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SEVENTH CLAIM FOR RELIEF

**Aiding and Abetting Liability for Montebello's Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder, and**

**Section 17(a) of the Securities Act**

54.     The Commission re-alleges and incorporates by reference Paragraphs 1 through 34 above, as though fully set forth herein.

55.     By reason of the foregoing, Montebello violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5], and Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

56.     Rojas knew, or recklessly disregarded, that Montebello's conduct was improper and rendered Montebello substantial assistance in this conduct.

57.     By reason of the foregoing, Rojas aided and abetted Montebello's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] as well as Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court grant the following relief:

I.

Enter an Order permanently restraining and enjoining Rojas from committing

COMPLAINT                                          15

and/or aiding and abetting the violations of the federal securities laws alleged against him in this Complaint.

## II.

Enter an Order permanently restraining and enjoining Rojas from participating in an offering of municipal securities, including engaging in activities with a broker, dealer, or issuer for the purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any municipal security.

## III.

Enter an Order imposing civil money penalties upon Rojas pursuant to Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## IV.

Grant such other and further relief, including equitable, as the Court may deem just and proper.

Dated:  September 19, 2019          /s/ Jason H. Lee
                                    Jason H. Lee
                                    Attorney for Plaintiff
                                    SECURITIES AND EXCHANGE COMMISSION